Directing and Dismantling Company, Inc., the appellant in this matter. Is there any reason why the severability clause would not have Article XX conflict with laws clause? Why that wouldn't allow us to strike Article I, Section 4? I don't think there's any reason. I think it does allow you to strike. I think it compels it. And not only I agree, but I think the union in their brief agrees as well. Now that would only apply to other job sites, right, expressly by its language, right? Yes, it would. So does it have any applicability whatsoever to the job site in question, the project as defined in Article I, Section 2? Absolutely not. It applies only to other job sites. The only job site, one of my first points to make here, this case has nothing to do with whether Allied Directing can apply those agreements to some future job site. It involves only the union's attempts to renege on the agreement with the Phyllis Hill site, which is the only agreement in existence at the time. Well, it's a little much to say it's got nothing to do with it since it's in your separate that out, and we were, for sake of argument, say we accepted that there was this severance possibility. Let's focus on Phyllis Hill's. What's wrong with the union's assertion, the district court's conclusion that you could unilaterally delay the Phyllis Hill's project, and you could take on additional work and sub-projects within that overall project and keep them going for another 20 years? Because it's physically impossible to continue the case perpetually, and that's, in collective bargaining agreements, what the case law is in collective bargaining agreements, the only ones that are found to have been in constitute contracts of indefinite duration are those which are perpetual in nature.  How do we know it couldn't go on at the project site forever? You've been doing it for 20 years. I'm not a construction engineer, but that seems like an awful long time to me. Phyllis Hill is a massive facility, and we can only tear it down as the work is released. That's the story. That's it. And I would note that this work has been going on for 20 years, and it wasn't until 2011, I believe, that the union decided the project went on too long. Now another fact is nothing in federal labor law regulates the length of a collective bargaining agreement. This agreement could have said it terminates in 2095 or the conclusion of the project, whichever is earlier, and we wouldn't be here today because it would not be a contract of indefinite duration. When a contract, in the cases we've said in our brief and the union has not attempted to distinguish them, a contract that terminates upon an event as opposed to a stated fixed county date is still nevertheless a contract of definite duration. All right, but suppose for some reason Article XX, conflict of laws, could not be applied by us. Then you have a problem, don't you? I don't think I have a problem. Why not? Because I... That could go on forever. I mean, you could go on the way I read it. That could go on forever and ever and ever, long after the project is completed, right? But it's still, as applied to Fearless Hills, it can't be terminated. Otherwise... It's still what? As the contract is applied to Fearless Hills, because that only runs for the duration of the project. Never mind Fearless Hills. Suppose that's over with. Look at this clause. It doesn't say anything. There's no limitation as to that applying that extension clause. Look at this. Article I, Section 4. In the event... Excuse me. ...AED, in its complete discretion, may elect to extend this agreement to such other jobsites on a jobsite-by-jobsite basis, there is nothing in that clause that limits it in any way as I can read it. What would limit that? The termination of the Fearless Hills Agreement. It doesn't say that. Well, if the agreement terminates, that clause terminates. It says, in the event AED is successful in procuring dismantling work at jobsites other than the project, within the union's geographical jurisdiction, AED, in its complete discretion, may elect to extend this agreement to such other jobsites on a jobsite-by-jobsite basis. Right. That contemplates that there's a series of separate, independent contracts. The right to extend... It contemplates that that agreement will apply to those other projects. Right? Yes. But when the AED... In AED's discretion. ...when the Fearless Project ends, when the Fearless Project ends, the right to extend it ends. Secondly... Well, is this... But if you enter into another agreement now, while the Fearless Hills Project is still ongoing, that disagreement will apply throughout. Yes. But this doesn't give Allied the right to keep this agreement going forever and ever, because it's very simple. The union can end this agreement as to another project by just simply refusing to enter into it. The union can always disclaim interest on a project. It doesn't have to contract for that project. Where does it say that? It's the federal labor law. A union can always disclaim interest in representing employees. Sure, but that sort of runs right into labor policy, doesn't it? But if you say, you can stick with our perpetual agreement, or you cannot contract with us, that's not much of a choice, is it? I think as to each independent job site, yes, I think it is a choice. It's the same choice that the union had when we went to the union and offered them this deal for Fearless Hills. I thought... Now, maybe I misunderstood. Easily, I could have misunderstood. Now we're talking about these other jobs. I thought you had acknowledged, and the union had acknowledged, that as to other jobs and other projects, those things could be... That piece of the contract could be taken out, and we would only be looking at the Fearless Hill project, right? Yes, I agree. When the court presented the question to us, does Article 20 suspend Article 1, Section 4? Our answer, and the union's answer, is yes. So since that's probably not the most defensible ground you've got, let's talk about the Fearless Hills project. What is... I understand the district court's concern to be that as to that project, there's no As Judge Van Antwerpen was saying, you've been there for two decades, this anticipation is you'll be there for at least another five, and you could take on more jobs and more jobs and more jobs. It goes on and on. I mean, at some point, doesn't it go beyond the bound of reason, even though you say, hey, it's just one project? Parties have defined all the work that Allied does at Fearless Hills as the project as it is written in that agreement. We've amended... This isn't a contract that was just signed in 1992. It was modified three times, the most recent in, I think, 2009, okay? At that time, the union knew that work was going on, and it went back into that contract. Frankly, I think the court's focus and the union's claim about we could continue to install the project or continue to enter into other agreements goes not towards to whether it is a contract of an indefinite duration, because I think the law on contracts of indefinite duration is if there's an end in sight, no matter how far down that site may be, that end may be, okay? No matter how small that leg at the end of the tunnel is, it is not a contract of indefinite duration. I think those arguments are more properly placed in the union's mutual mistake or unilateral mistake claims. And if that's the case, then don't we have factual issues here? Is a mistake a classic question of intent and therefore a question of fact? I think that under the restatement, there's no basis, even on the pleadings, for unilateral or mutual mistake claim. Under the case law, as we've cited in our brief, in the restatement, you first must have a mistake of fact as to a current fact. The mistake here wasn't to a current fact. The mistake here was the project went on longer than we thought it was going to go on. That's a mistake as to a future event. Secondly, a party cannot void a contract on a claim of a mistake if it bore the risk of a mistake. Now, the language on the risk of a mistake was you knew you had facts, you knew they were limited, but you relied on them. Now, the union clearly wore the risk of that mistake that the contract went on too long. They could have easily demanded, I'm not going to say they would have ever gotten it, but at least gotten a re-opener, because that's the essence of the problem in this case. The union doesn't have a re-opener. It failed to renegotiate the ability during the term of the project to up the wages through negotiation and economic pressure. That is a case, they have failed to establish even on their pleadings a mistake here or the basis for a mistake. Nor have they done or could they plead, I think they pled misrepresentation at some point in their complaint. You're both big boys. You've done this stuff before. You know what you're doing. Yes. Okay. Thank you, Mr. Noonan. Thank you very much. Ms. Hertzig. May it please the Court, my name is Regina Hertzig and I represent the Operating Engineers Local 542 in this matter. May I get something out of the way of the answer? I assume you also agree, as you have said, that the severability, the conflict of laws clause XX would allow you to avoid the provision allowing indefinite extension. I'm talking now about the extension clause giving allied the complete discretion. Do you agree with that? Yes. Yes, Your Honor. I do agree with that, but it doesn't. Your argument goes to the jobs. It doesn't help the problem of the fact that for 20, going on 22 years now, the union, and don't forget that the union represents the workers that work there, has been stuck with this collective bargaining agreement and it is of indeterminate duration. Well, help us out with that and start with this point. In the briefing and here at the podium, Mr. Noonan has said, look, we've negotiated this thing with them three times, most recently in 2003. They know what is going on here and they come back and they work with us. It's not like it's a surprise to anybody that this is a big job. Everybody knew it was a big job and it's not of indeterminate length because when the job's over, it's over. So, where's the flaw in that line of reasoning that we're being presented with? First of all, the union had no choice but to try to basically beg for additional wages for its members in the context of disagreement that they're stuck with from 1992. You're saying they had no choice, but by your account, you do have a choice. Eventually, you went to court and said, hey, this is a contract of indeterminate length. Therefore, we should be able to void it at our discretion. Whenever we want to, we want out. If that's the truth, then why don't you go back and renegotiate three times? Why don't you just say it's indeterminate length, we're gone? Unfortunately, I can't answer that question because I believe that the union was not our concern at that point. I can't answer the question in terms of why the union did not. They just were doing the best they can in terms of getting some kind of wage increase. Should course of dealing matter to us? Should we pay attention to how the parties behaved with each other before the union came up with the legal theory that this is a contract of indeterminate length? I don't believe so, Your Honor, in terms of the fact that this is a contract of indeterminate duration. Again, this project has gone on and on. The district court correctly found that it was a contract because one party can control the length of the project. There's been, you would think of- If we were to adopt your hypothetical stalling approach, couldn't that invalidate contracts of this nature everywhere where no definite completion date is set? With all respect, Your Honor, I don't think it's necessarily invalidating the contract. It's giving the parties an opportunity in this labor context, in the context of collective bargaining, to be able to give the employer reasonable notice pursuant to the National Labor Relations Act, the 60-day notice, to say, we want to renegotiate this contract. Then, in the event that we cannot reach an agreement, that the parties are left with their economic weapons. That's what's been foreclosed upon from the union's perspective for 20-something years. If they go out on strike- You're a union. You're in this business. You know what you're doing. Nobody held a gun to your head. I don't want to say big boys. You're big girls. You knew what you were doing. You're big people in getting into this. There are other contracts like that out there, aren't there? I know of none. I know of none. The Rust Belt of Northeast United States? Your Honor, with all honesty, I've been practicing labor law for 27 years. I've never seen a labor contract that lasts more than five. Well, by your reasoning, then your career will have an indeterminate duration because it's been around for 27 years. There's no end point. I mean, the fact that it's been around for a long time doesn't mean there's no end point. No, but the end point should be when the union provides its 60-day notice under the F7 provisions. That's exactly the point that I think is in Judge Van Antwerpen's question. If that's the reasoning, then there's no such thing as a contract because, you know, then you could always say, you know what, we want to renegotiate. You sound like a professional football player. It's time to renegotiate. There's still a contract. There's a contract. The only way out of that contract, I guess, is, on the facts and theories presented to us now, is if it's of indeterminate duration, right? You don't get to get out because you don't like the deal anymore. That's correct, Your Honor. And again, you know, we have no idea how long this project, you know, may last. I mean, it may, no one, I can't even imagine that anybody anticipated that it would be 22 years. You know, it's... Well, you say, or they say in their supplemental filing, I think, if I've understood it right, that if they have... How did this come up? Oh, it was the argument about the Ohio case. You sort of put out there in your supplemental filing that they're taking new contracts within the contract. And they've come back and said, that's not true. It's one project. And that's all it is. I'd like you to expand on that. If they've got, if the Fearless Hills project is a single project, the fact that it moves in phases, from hot phase to the cold phase to the rolling, or whatever the third phase is, does it make any difference that it goes in phases? I believe it does, Your Honor. But again, that goes back to the party's intent. And I'm kind of at a loss on that piece, because from my perspective, the person who negotiated the contract is dead. So... Would you argue that a contract that says it's in effect until completion of the project is by its very nature of an indefinite duration or indeterminate? Yes, Your Honor. My God, wouldn't that invalidate scores of contracts throughout the United States? You're not saying the contract's invalid. You're just saying that it's terminable. It's terminable. I'm not saying it's invalid. That's correct. Well, I know, but there could be... Suppose you had a contract that might take one year or two years, or it could take longer. You're saying that would be terminable? If it's terminable, you've afflicted the validity of the contract, haven't you? That's a major chink in the enforcement of that contract by the parties, isn't it? Yes, Your Honor. Yes, Your Honor. But I'm asking for you to view this... As a court, you have the authority to fashion federal labor law independent of generally the law of contracts. Yeah, but even if we've got... Even if it were true that we could sort of sense a certain aura around labor law that should make us disregard ordinary principles of contract law, the suggestion that you're making... Well, how does that affect the economic positions of parties if unions are able to say, whenever they get the feeling, hey, this is longer than we'd like, we want out? How do people plan around that? How is that a workable rule of law? How would we even frame that? If we were to give you what you want, what would the order look like? The order would look like Judge Shiller's order in district court that said that this contract is of interminable... And this is a two-way street, right? You could have a contract. You could have a collective bargaining agreement that, for example, says it's in effect for the duration of the project and that there's a 7% annual increase in wages and the employer, after a while, says, wow, I'm getting killed by this contract. What can I do about it? So it's not only unions that step out of these contracts, right? That would be the case. But to be honest with the court, and absolutely honest, you saw both my adversary and I, we weren't citing any cases directly on point because there aren't any. This really is a case of first impression. There are these pieces of general contract law that apply, but with respect to this issue of, you know, it is... You know, because there is no end in sight and it is of indeterminable duration... Hold on. Didn't you just put the rabbit in the hat there when you said there's no end in sight? There is some end to the Fearless Hills... At some point, whatever's to be done to the... Whatever USX built there will be unbuilt. So it's not of indeterminate... It's not of endless duration. It may be at this point that it's of indeterminate duration, but is that the same thing? Does that give you a legal right to go out, to get out? Well, that's what the Montgomery Mail Handlers said, and when we talk about a contract of interminable duration, that it would be terminable, again, with reasonable notice, after a reasonable period of time. And there's a difference between perpetual and indefinite, right? I... Or indeterminate? Well, both... You know, I was looking up the dictionary definition and whatever, and it talks about... You know, it talks about vague, it talks about... You know, it talks about not having a fixed duration. This is a contract that doesn't have a fixed duration. It does. Well, I shouldn't say it does. I mean, when you say fixed, you don't know what time it's going to come, but it's fixed in the sense that there's an endpoint to the project, right? I mean, isn't there? I mean, at some point, the last nail gets pulled. At some point, the last nail gets pulled, and the union and its members have no idea when that might be. But it is a facility. It's a physical facility. It may be vast, but the project is limited to that facility, and at some point, presumably, even if you tore everything down that's there, at some point, there's nothing more to tear down, right? That's correct, Your Honor, however... Unlike the clause, which initially was objected to, Article I, Section 4, which could extend anywhere. Two different things. That is correct, that it is correct that they are two different things, and apparently they don't have any interest in doing any additional projects, so they have decided that they would concede that point. But nonetheless, they want to continue to have the union bound to work under, you know, 10-year-old... Its members work under wages that are 10 years old for the duration of the Fairless Hills Project, or until they decide benevolently they're going to... They'll give raises or increase... I don't dispute that there's sympathetic circumstances, but is that really a basis on which we can do something? It's certainly... Can we say under federal labor law we can? I believe you can, because the... Just explain that one more time, so I can get this through my head. The National Labor Relations Act supports the concept, you know, of collective bargaining, and it's both... You have an obligation to bargain collectively if the workers have chosen to be represented by a union. Correct. Right? But that ultimately, it's a balancing, that ultimately the parties can use economic weapons, and the National Labor Relations Act also supports the use of those economic weapons, on both ends, both on the union end and on the management end, that management can lock out, union can go out on strike. I have to have... My flair is mainly under railway labor, where it's very limited, but it's much broader. It's much, much broader there. You have to negotiate in good faith until you reach impasse. Even if you're under an existing contract? No. Once you've served your notice, you've served your notice, you know, you send a notice under 8D, which says, 16-day notice, I want to terminate, I want to... Even when I have a binding contract. After a while, I decide, my workers aren't happy, I can serve a notice on you, even though we have a binding contract. Not if there's a duration in the contract, Your Honor. If there's no duration, then we can. If there's no duration, then that's when we come back to Judge Shiller's, you know, point, and our argument... When I say no duration, you mean duration of such a nature that basically renders the contract unenforcing. That's correct. So you're really, it's sort of the same as the Railway Labor Act. You have to get to the point where there's no more contract, where it's a major dispute, is what they used to call it under Railway Labor Act. And if we take out the second piece, that is the Article 1 section, that is Article 20, we can extend this any place we want clause. If we take that piece out, right, then we're stuck with Judge Shiller's reasoning that it's of... It's going to last forever because, quote, Allied could extend the agreements indeterminately by stalling the Ferris Hill project or contracting for additional work on that project. That's all you're left to stand on, right? That is correct. And that's exactly what's appeared to happen. But couldn't a party to any labor contract do that? Isn't that a possibility under just about any labor contract? That they would stall? They could stall the project, but again, under any normal labor contract, Your Honor, you would have a determination clause in the contract that said it's three years, it's five years, and you send out your notice. The contract may be stupid, it may be ill-advised, but it's still a contract, right? But it's a contract that we believe that is unenforceable and that we've asked for you to declare that we can determine that it... that we can terminate it with reasonable notice within a reasonable period of time so that the parties can be left with their economic weapons. And again, you know, I don't mean to ask for equity here, but you've got to remember that they're negotiating for real workers who are working up there. Nobody's forgetting that there are real people on both sides of the dispute. Thanks very much. Thank you. Mr. Nuna, did you reserve time? Five minutes, sir. She says you could go on forever and ever and ever like the... I was going to say the words to the end of the hallelujah chorus, but I won't. They could go on forever and ever at the job site. And you say to that... That can't be possible. It cannot be perpetual because there's a limited and defined amount of work. It might be a large amount of work, but it's limited and defined. Limited to the physical parameters of the job site. Correct. The contract defines it's manly work at Phyllis Hills, pursuant to a contract with USS. If there was an agreement that said that it would remain in effect until a certain person dies at the end of their life, would you say that is a contract of indefinite duration or has a fixed term? I would say it is not a contract of indefinite duration. It's a contract which ends upon the occurrence of an event. I think the case law we've cited would concur with that. I want to emphasize that the substantive terms of this contract allies rights under the contract, all the rights that the union now, after 20 years, decides it doesn't like, are not before the court here. There's no claim that this contract is anything but a valid collective bargaining agreement negotiated in good faith. It is entitled to the same protections of the law as all collective bargaining agreements, even though it may be somewhat unique. It is not unique because it's a project agreement. There are thousands of project agreements in this country. We have cited in our brief, one involved in the National Labor Relations Board, the expert environmental control case that's in our brief, in which the labor board found unlawful, an unfair labor practice for a company to try to terminate a project agreement during its term. So what the union's, the result of what the union wants here is that they could have canceled this contract within 60 days after they signed it. The argument they make in terms of Montgomery Mailers, Montgomery Mailers is not applicable here. Montgomery Mailers involved a contract of a term which after it expired said it will continue in effect until a new contract's negotiated. That's the type of perpetual agreement that is found to be of indefinite duration and voidable, but voidable not while the contract was still in effect. Their argument that it could go on and go on and go on is all extraneous to the fact that the Fearless Hills project and the contracts as they apply to Fearless Hills are defined, is a defined amount of work. To allow the union to reopen this agreement violates the express language of the agreement. The agreement says this contract goes, terminates upon the termination of the Fearless Hills project as well as the company's recognition of the union. Those contracts cannot be read as anything other than intending that this is a one project deal and you don't renegotiate it. In 1992, Allied Erecting went to that union and offered them and their members years and years of employment, years of dues, years of payments into the union's trust fund. We've had 20 something years of labor fees. Allied asked in gut, in exchange for those long term promises, labor fees, meaning a no strike clause. And for the union now to want to open that contract and apply economic pressure to us denies us the benefit of the bargain we struck. As a practical matter, if the contract is as you say and we should pay attention to how the parties behaved with each other over the course of time, why is it that you went back to the table and negotiated higher wages and benefits with them three times? I mean, is it because Allied employer? Or because you recognized that there was some risk that your contract would be found to be invalid for being of indefinite duration? Oh no. It was because we were a decent employer, the union had trust fund. I know something about this. I know this is on the record. I negotiated those amendments. The unions, they were primarily renegotiations to increase the union's benefit payments in accordance with the requirements of the union's benefit funds. Otherwise the union would lose the benefit. Is the estimate that this is going to take another five years really a solid one you think? I realize this is just a practical question. I'm just curious. I hate to answer it because I have no idea how long it will take. My answer would be irrelevant how long that project continues. I can tell you that Allied doesn't control it. It's impossible for Allied to stall because Allied, it's USX that controls the work that it releases to us. And Allied has obligations to USX when it performs the work. Secondly, we mentioned the Ohio case. The issue that we could now contract for future work, if you look at footnote 20 of the Ohio case, Allied has all the work. It cannot contract for more because it already has been given all the work. Okay. Thank you. Thanks very much. We'll take the case under advisement. I appreciate everyone's arguments. We'll go ahead and recess the board. Thank you.